<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA R. HAYES, | Civil Action No.: 08-2111 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL J. ASTRUE, | |
| Defendant. | |

**LINARES**, District Judge.

Presently before the Court is Plaintiff's Complaint seeking review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff's Disability Insurance and Supplemental Security Income benefits. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court affirms ALJ Shoemaker's decision.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Payments on July 20, 2004, "alleging an inability to work beginning December 15, 2003 due to fibroid, endometriosis, carpal tunnel syndrome, anxiety/depression, abdominal surgeries, and pain in the lower back, neck, and knee." (R. at 22.) Plaintiff's claims were denied; she then filed for a hearing appeal. (<u>Id.</u>) ALJ Shoemaker held a hearing on June 26, 2006 in which

Plaintiff appeared and testified on her own behalf.  (Id.)

At the time of the hearing, Plaintiff was "a forty-three year-old with a high school education and one year of college."  (Id. at 23.)   ALJ Shoemaker held that Plaintiff was "insured for benefits through the date of [his] decision," and that she "has not engaged in substantial gainful activity since December 15, 2003."  (Id. at 36.)  He further found that Plaintiff's chronic low back pain was "severe," but that this impairment, in combination with her other non-severe impairments, did "not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. 404.1521 and 416.921)."  (Id.)  Additionally, he determined that despite her impairments Plaintiff "retained[ed] the residual functional capacity to perform the exertional demands of light work" with some limitations.  (Id. at 36-37.)  Finally, he found that her "impairment does not prevent her from performing her past relevant work [as] a data entry clerk/operator and administrative assistant."  (Id. at 37.)  ALJ Shoemaker thus found that Plaintiff was not disabled under §1614(a)(3)(A) of the SSA.   Plaintiff presently appeals this decision.

## II.     LEGAL STANDARDS

### A.     Standard of Review

This Court must affirm an ALJ's decision if it is supported by substantial evidence.  See 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Thus, when "the [ALJ] is faced with conflicting evidence, [she] must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987)

(citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The District Court must review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, (3d Cir. 1984). But, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Where the ALJ's findings of fact are supported by substantial evidence, the Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999).

      B.      **The Five-Step Evaluation Process**

Under the Social Security Act, a claimant must demonstrate that she is disabled based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do his previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a Plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. At Step 1, the Commissioner decides whether Plaintiff is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to Step 2. At Step 2, the Commissioner must determine whether the Plaintiff's impairment or combination of impairments is severe. If the impairment is not "severe," Plaintiff is not eligible for disability benefits. 20 C.F.R. §§

404.1529(c), 416.920(c). At Step 3, the Commissioner must decide whether the Plaintiff suffers from a listed impairment. If the Plaintiff does not suffer from a listed impairment or its equivalent, then the Commissioner moves to Step 4. At Step 4, the Commissioner determines whether based on Plaintiff's residual functional capacity ("RFC") she can still do her past relevant work. If the Commissioner determines that Plaintiff can no longer perform her past work, then she proceeds to step five. The burden of proof is on the Plaintiff at these first four steps. See Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). At step five the burden shifts to the Commissioner to show that other work exists in significant numbers in the national economy that the Plaintiff could perform given her RFC, age, education, and past work experience. If the Commissioner cannot show that work exists which Plaintiff could perform, then the Plaintiff is entitled to disability benefits.

### III. DISCUSSION

Plaintiff makes the following arguments challenging ALJ Shoemaker's opinion: (1) he failed to fully or fairly evaluate or develop the record as to Plaintiff's impairments due to depression and anxiety; (2) he erred in ignoring, discrediting, and failing to evaluate Plaintiff's testimony and subjective complaints; (3) he failed to evaluate whether Plaintiff's individual and combined impairments met or equaled any of the Listings; (4) he erred in evaluating Plaintiff's RFC by failing to consider the combined effects of her impairments; and (5) he erred in concluding that Plaintiff could return to her past relevant work as a data entry clerk/operator or administrative assistant.

    **A.**    **The Severity of Plaintiff's Physical and Mental Impairments**

Plaintiff claims that ALJ Shoemaker erred at Step 2 by failing to find that all of her

disabilities qualified as severe. (Plf.'s Br. at 15.) She asserts that he did not fully consider all of the evidence or appropriately consider and credit Plaintiff's subjective complaints and testimony. (Id. at 15, 18, 20.) Specifically, Plaintiff appears to argue that Dr. Multani's reports from September 19, 2005, to March 5, 2007, and Dr. Matthews' November 11, 2005 report, which were submitted to the Appeals Council after ALJ Shoemaker had already issued his decision, were improperly excluded from the evaluation of Plaintiff's mental impairment. (Id. at 15-16, 20.)

"[W]hen [a] claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." See Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). The Third Circuit has stated that to hold otherwise "would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand." Id. at 595. "New" evidence is evidence that is "not merely cumulative of what is already in the record." Szuback v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). "Material" evidence is evidence that is probative and relevant and that has "a reasonable possibility that [it] would have changed the outcome of the Secretary's determination." Id.

Here, Plaintiff has not made an adequate showing to justify remand with regard to either set of reports. Dr. Multani's records from September 19, 2005 to March 5, 2007, show or opined that Plaintiff was diagnosed with depression and prescribed psychotherapy and the antidepressant Paxil. (R. at 332.) Plaintiff reported that she suffered from crying spells and panic attacks. (See, e.g., id. 342, 349.) However, consistently throughout the reports, Dr. Multani also reports that Plaintiff is alert, neat, groomed, and cooperative with coherent speech and no hallucinations or suicidal thoughts. (See, e.g., id. at 336, 338, 344, 346.) Dr. Multani's reports are not "new"

because the record contains several different doctor's reports making nearly identical observations of Plaintiff's mental condition. (See id. at 24-25.) Dr. Multani's reports are not material because there is no reasonable possibility that these reports, which are merely cumulative of other evidence in the record, would have persuaded the ALJ to change his mind.

Dr. Matthews' report stated that Plaintiff was ambulatory without assistive devices, and that Plaintiff's capacity to walk, climb, stoop, bend, and lift was limited. (Id. at 454-455.) The report also expressed the opinion that Plaintiff's "Length of Disability" was "more than 90 days but less than 6 months." (Id. at 455.) The report further classified her "Orthopedic Disability" as one which where her "functional capacity [is] adequate to perform only little or none of the duties of usual occupation or self care." (Id.) Dr. Matthews' November 11, 2005 is also neither new nor material. The record considered by ALJ Shoemaker contains a letter dated January 27, 2006, from Dr. Matthews which contains all relevant information contained in the earlier report. (See id. at 32.)

Plaintiff also fails to persuade this Court that she had good cause for failing to submit these records to the ALJ. In her brief, Plaintiff argues that ALJ Shoemaker breached his duty to develop the record by failing to assist Plaintiff in obtaining the records from EOGH and Dr. Multani for the 2005-2006 time period. (Pl.'s Br. at 21.) An ALJ is obligated to develop Plaintiff's complete medical history for at least the twelve months preceding the month in which Plaintiff filed her application. See 20 C.F.R. §§ 404.1512(d), 416.912(d). Here, Plaintiff filed her application on July 20, 2004. ALJ Shoemaker considered medical records of Plaintiff for periods both before and after her application date, including records from Dr. Russo (R. at 205-21), Dr. Landsberg (id. at 257-65), Dr. Gallagher (id. at 278-79), Dr. Matthews (id. at 280-887), Dr.

Rothman (id. at 288-93), Dr. Larkin (id. at 300-02), and APN Nancy Schweitzer and therapist Lynn Johnson (id. at 267-77). He also considered the reports of two State Agency medical consultants, Dr. Harding and Dr. Micale, from examinations of Plaintiff conducted in late 2004 and early 2005. (Id. at 222, 266.)

Furthermore, Plaintiff and her attorney had the responsibility to submit any new evidence. See 20 C.F.R. §§ 404.1512(a), 416.912(a) ("[Y]ou must bring to our attention everything that shows that you are blind or disabled.") Here, on June 21, 2005, prior to the first administrative hearing, ALJ Shoemaker sent Plaintiff's counsel a letter stating that

> we need to make sure that [Plaintiff's] file has everything you want the ALJ to consider. You and your client are responsible for submitting needed evidence . . . . If there is more evidence you want the ALJ to see, get it to us as soon as possible. If you need help, you should contact us immediately. You may ask the ALJ to issue a subpoena . . . .

(R. at 89-90.) At the June 26, 2006, hearing Plaintiff's counsel claimed that there was an additional report from a psychiatrist, Dr. Multani. (Id. at 42.) ALJ Shoemaker asked how much time Plaintiff's attorney would need the record held open to receive the report. (Id.) Plaintiff's attorney requested thirty days, which ALJ Shoemaker said he would "gladly give." (Id. at 42-43.) However, no additional documents were submitted prior to his decision on September 15, 2006. Therefore, this Court finds that remand for consideration of this "new" evidence is not warranted.

Plaintiff also argues that ALJ Shoemaker improperly discredited her subjective complaints and testimony. (Pl.'s Br. at 20.) ALJ Shoemaker considered and discussed Plaintiff's various complaints. For example, he acknowledged Plaintiff's assertion that "[h]er pain radiates down into both buttocks, right leg to right knee, and sometimes her whole leg goes to sleep, and [that] she allege[d] [that] this occurs at least once a day." (R. at 31.) He noted that she "reported having

muscle spasms at the top right side of [her] neck and shoulder blade area, . . . almost constant[ly] since [her] car accident in January of 2006." (Id.)  Plaintiff testified that her abdomen aches constantly and "feels like her belly is splitting apart" when she sneezes or coughs.  (Id.)  However, ALJ Shoemaker found that Plaintiff's "medical records do[] not support that the claimant's impairment is as severe as she contends." (Id. at 32.)  He found "that claimant's assertions concerning the severity of her impairments, and their impact on her ability to work, are only credible to the extent that they support a finding of being able to perform light work with the cited preclusions."  (Id. at 34-35.)  An ALJ is not required to accept Plaintiff's testimony without question, he has the discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of her alleged symptoms.  This Court finds that ALJ Shoemaker appropriately considered and took into account Plaintiff's subjective complaints.

ALJ Shoemaker engaged in a thoughtful and comprehensive analysis in determining that Plaintiff's only severe impairment was her back problem.  He considered: (1) Plaintiff's self reported daily living activities, (2) "the location, duration, frequency, and intensity of her pain or other symptoms," (3) "precipitating and aggravating factors," 4) the medications Plaintiff took to alleviate pain for her symptoms, 5) other treatments for her pain and other impairments, and (6) "other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments," and, (7) the numerous medical reports from Plaintiff's treating physicians.  (R. at 24-26, 33-34.)  Accordingly, this Court finds that ALJ Shoemaker's determination of the severity of Plaintiff's physical impairments was supported by substantial evidence.

This Court reaches the same conclusion with respect to Plaintiff's claims regarding her mental impairments. Where a Plaintiff asserts mental impairments, the same five-step evaluation is used, but the Commissioner "must follow a special technique at each level in the administrative review process." 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2); see also Morales v. Apfel, 225 F.3d 310, 316 n.7 (3d Cir. 2000). The ALJ's decision

> must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in . . . this section.

20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). Additionally, in making an impairment determination, "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317.

At Step 2, ALJ Shoemaker appears to find that Plaintiff has a medically determinable mental impairment, but one that was not severe. (R. at 25.) He considered numerous pieces of objective evidence including, for example, a December 14, 2004, report by Nurse Schweitzer of NPBHC finding that Plaintiff's Global Assessment Functioning ("GAF") was 65 indicating that she has only mild symptoms of mental impairment and that she generally functioned pretty well and had some meaningful interpersonal relationships, a neurological consultative examination report from March 31, 2006, by Dr. Rothman, reporting that Plaintiff was alert, had no difficulty with mental recall, a State Agency psychological consultant's report from March 17, 2005, which found that Plaintiff's mental impairment was not severe, an EMG/nerve conduction study from

April 20, 2005, finding that Plaintiff was "mildly depressed," and a neurological exam from April 13, 2006, diagnosing Plaintiff with Post Traumatic Stress Disorder ("PTSD") as a result of her motor vehicle accident on January 1, 2006. (Id. at 24-25.) ALJ Shoemaker also noted that "there [was] no diagnosis of a mental disorder by a psychiatrist in the evidence of record." (Id. at 25.) In addition to the medical evidence, he also considered Plaintiff's testimony regarding her daily activities. (Id. at 31.)

Based on this evidence, ALJ Shoemaker found that Plaintiff "was experiencing no limitation in daily living activities and social functioning, only a mild limitation in concentration, persistence and pace, and never has had episodes of deterioration or decompensation in work settings." (Id. at 25.) Additionally, although he acknowledged that she had been diagnosed with post traumatic stress disorder following a motor vehicle accident, he found "that there is no objective medical evidence of current functional limitations or that her mental condition lasted or will last for twelve consecutive months, as required under the Social Security Act to be a severe impairment." (Id.) Again, ALJ Shoemaker engaged in a thorough analysis of Plaintiff's claim of mental impairment. This Court finds that his determination that her mental impairment was not severe is also supported by substantial evidence.

      B.      **The Comparison of Plaintiff's Impairments to the Listings**

Plaintiff argues that ALJ Shoemaker failed to analyze or provide an explanation for his conclusions regarding whether her impairments met or equaled any of the Impairment Listings. It is true that the majority of the "Listing of Impairments" discussion in his opinion is spent restating the Listings that he used for comparison, but he does explain (by reference to the "Residual Functional Capacity" ("RFC") section of his decision) the basis for his determination.

(Id. at 26-30.)  In the RFC section of the opinion, he engaged in a thorough analysis of the evidence on record for each and every one of Plaintiff's claimed injuries, finding that "no objective evidence in the record . . . support[s] a finding that the claimant's condition meets or equals any Listing requirement."  (Id. at 30-35.)  He also noted that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any Listed impairment."  (Id. at 30.)  Therefore, this Court also finds that the decision at Step 3 was also supported by substantial evidence.

### C. Plaintiff's RFC and Ability to Perform Her Past Relevant Work

In her remaining arguments, Plaintiff contends that ALJ Shoemaker's evaluation of Plaintiff's RFC at Step 4 was improper because it failed to consider and evaluate the combined effects of her individual and multiple impairments, regardless of their severity.  (See Plf.'s Br. at 28.)  A benefits claimant may be disabled due to the effect of her impairments in combination. Therefore, an ALJ must consider the claimant's combined impairments.   Section 404.1569(e) provides:

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence, including the information described in § 404.1529(c).

20 C.F.R. §404.1545(e).

Plaintiff argues that ALJ Shoemaker "did not even consider [her] non-exertional impairments and limitations . . . , including but not limited to her posture, hand, finger and wrist manipulation, limited ability to reach, and her neck, wrist, knee, back, hand, and abdominal pains." (Plf.'s Br. at 29.)  But, he did consider these factors, limiting Plaintiff's RFC accordingly. (See R. at 30-32.)   As discussed above, although he considered the "totality of the record" including Plaintiff's testimony, he found that the severity and extent of her subjective claims were not supported by the objective medical evidence, which he referenced in detail in his decision. (Id. at 32.)  He also noted that "[t]here are no medical opinions in the record limiting the claimant's exertional functional capacity lower than [the RFC determined in the decision;] [n]o doctor has ever stated or suggested that the claimant was disabled or totally incapacitated."  (Id.) Therefore, this Court finds that there is substantial evidence to support ALJ Shoemaker's determination of Plaintiff's RFC for light work with some limitations.

Finally, ALJ Shoemaker found at Step 4 that given this RFC, Plaintiff had the functioning necessary to perform her past relevant work as a data entry clerk or administrative assistant.  (Id. at 36.)  In the past, she worked "as a cleaner, certified home health aide, laundry attendant, postal clerk, data entry clerk, inventory specialist, administrative assistant, department store sales associate, secretary, and clerk typist." (Id. at 23.)  Based on Plaintiff's responses in a disability questionnaire and his review of the U.S. Department of Labor Dictionary of Occupational Titles and Selected Characteristics manuals, ALJ Shoemaker found "that the jobs of a data entry clerk and administrative assistant were sedentary occupations as performed by [Plaintiff]."  (Id. at 35.) Therefore, given ALJ Shoemaker's finding that Plaintiff has the RFC to perform light work with some limitations, his additional finding that Plaintiff is not disabled because she is able to perform

her past relevant sedentary work is also supported by substantial evidence.

## IV. Conclusion

For the reasons set forth above, this Court concludes that the Commissioner's determination is supported by substantial evidence and is hereby affirmed. An appropriate Order accompanies this Opinion.

DATED: May 6, 2009                    /s/ Jose L. Linares
                                      JOSE L. LINARES
                                      UNITED STATES DISTRICT JUDGE